UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————— X
                                                    :
NADIRE ATAS,                                        :
                                                    :
             Plaintiff,                             :
                                                    :          1:22-cv-00853-JPO
      - against -                                   :
                                                    :          *Pro se* case
THE NEW YORK TIMES COMPANY, *et al.*,               :
                                                    :
             Defendants.                            :
                                                    :
——————————————————————— X

## <u>MEMORANDUM OF LAW IN SUPPORT OF<br>THE NEW YORK TIMES DEFENDANTS'<br>MOTION TO DISMISS</u>

David E. McCraw
The New York Times Company
Legal Department
620 Eighth Avenue
New York, NY 10018
Phone: (212) 556-1234
Fax: (212) 556-4634
mccrad@nytimes.com

*Attorneys for Defendants The New York Times Company, Ellen Pollock, Kashmir Hill, Aaron Krolik, The Daily Podcast, Michael Barbaro, John Does 1-20, and XYZ Corporations 1-20*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...............................................................................................iii

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ................................................................................................................ 1

I.  ATAS'S LEGAL PROCEEDINGS IN CANADA PRIOR TO PUBLICATION ............. 1

    A.  Atas Was Found to Have Engaged in Campaigns of Defamation and
        Harassment............................................................................................... 2

    B.  Atas Was Deemed Mentally Ill ................................................................ 4

    C.  Atas Was Found to Have Been Fired for Dishonesty ............................. 4

    D.  Atas Was Declared a Vexatious Litigant ................................................ 5

    E.  Atas Was Charged with Assault and Other Crimes ................................ 5

    F.  Atas Was Alleged to Have Threatened Tenants and Maintained Her
        Properties in an Unsafe Condition .......................................................... 5

II.  THE PUBLICATIONS AT ISSUE ............................................................................. 6

    A.  The January Article.................................................................................. 6

    B.  Atas's February 2021 Arrest and Criminal Proceedings ....................... 7

    C.  The February Article................................................................................ 7

    D.  The February Interview............................................................................ 8

    E.  The April 6 Podcast ................................................................................. 8

    F.  Atas's April 7 Criminal Charges............................................................. 8

    G.  The April 24 Article................................................................................. 9

    H.  The April 26 Interview............................................................................. 9

    I.  The May 3 Podcast.................................................................................. 9

III.  THE COMPLAINT ................................................................................................. 10

LEGAL STANDARD....................................................................................................... 10

I.      MOTION TO DISMISS ....................................................................................... 10

II.     NEW YORK ANTI-SLAPP LAW ....................................................................... 11

III.    JUDICIAL NOTICE ........................................................................................... 12

ARGUMENT ................................................................................................................ 12

I.      THE STATEMENTS AT ISSUE ARE SUBSTANTIALLY TRUE .............................. 13

II.     THE FAIR REPORT PRIVILEGE BARS ATAS'S CLAIMS ....................................... 15

III.    ATAS HAS NOT AND CANNOT PLAUSIBLY PLEAD ACTUAL MALICE ........... 16

IV.     ATAS'S VICARIOUS LIABILITY CLAIM FAILS ....................................................... 18

CONCLUSION ............................................................................................................... 19

**TABLE OF AUTHORITIES**

**Page(s)**

Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................... 10, 18

*Atas v. Dale and Lessmann LLP*, 2018 H.R.T.O. 894 (Can.) ............................................... 1, 5, 14

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ............................ 10

*Beary v. West Publ'g Co.*, 763 F.2d 66, 68 (2d Cir. 1985) ............................................ 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................... 10

*Biro v. Condé Nast*, 963 F. Supp. 2d 255 (S.D.N.Y. 2013) .......................................... 11, 17

*Carroll v. Trump*, 590 F. Supp. 3d 575 (S.D.N.Y. 2022) .............................................. 11

*Cerasani v. Sony Corp.*, 991 F. Supp. 343 (S.D.N.Y. 1998) ........................................... 12

*Coleman v. Grand*, 523 F. Supp. 3d 244 (E.D.N.Y. 2021) ............................................. 11

*Contemporary Mission, Inc. v. The New York Times Co.*, 842 F.2d 612 (2d Cir. 1988) ............. 16

*Egiazaryan v. Zalmayev*, 2011 U.S. Dist. LEXIS 140851 (S.D.N.Y. Dec. 7, 2011) ................... 17

*Friedman v. Bloomberg L.P.*, 884 F.3d 83 (2d Cir. 2017) ............................................. 16

*Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298 (2d Cir. 1986) .................................... 13

*Guzman v. United States*, 2013 U.S. Dist. LEXIS 131684 (S.D.N.Y. Feb. 14, 2013) ................ 12

*Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657 (1989) ................................ 16

*In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371 (S.D.N.Y. 2001) .................... 10

*Kesner v. Buhl*, 590 F. Supp. 3d 680 (S.D.N.Y. 2022) ................................................ 11

*L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011) ................................... 12

*Lichtenstein v. Cader*, 2013 U.S. Dist. LEXIS 127645 (S.D.N.Y. Sept. 6, 2013) ................ 12, 14

*Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102 (2d Cir. 2015) ........ 14

*Masson v. New Yorker Mag., Inc.*, 501 U.S. 496 (1991) ............................................................... 15

*Montesa v. Schwartz*, 2015 U.S. Dist. LEXIS 193000 (S.D.N.Y. Sept. 22, 2015) ....................... 14

*Peoples Trust Company v. Atas*, 2018 O.N.S.C. 58 (Can.) ............................................. 4, 5, 14, 17

*Printers II, Inc. v. Prof'ls Publ'g, Inc.*, 784 F.2d 141 (2d Cir. 1986) ........................................... 13

*Rolon v. Hennenman*, 517 F.3d 140 (2d Cir. 2008) ...................................................................... 10

*Sweigert v. Goodman*, 2021 U.S. Dist. LEXIS 77704 (S.D.N.Y. Apr. 22, 2021) ........................ 11

*Trikona Advisors, Ltd. v. Chugh*, 846 F.3d 22 (2d Cir. 2017) ...................................................... 14

<u>Statutes</u>

N.Y. Civ. Rights Law § 74 ............................................................................................................ 15

N.Y. Civil Rights Law § 76-a ................................................................................................. 11, 16

<u>Other Authorities</u>

Office of the Governor, *Governor Cuomo Signs Legislation to Stop Frivolous Lawsuits Meant to Intimidate, Bully or Suppress Free Speech* (Nov. 10, 2020) .................................................... 11

Defendants The New York Times Company, Ellen Pollock, Kashmir Hill, Aaron Krolik, The Daily Podcast, Michael Barbaro, John Does 1-20, and XYZ Corporations 1-10 (together "The Times") respectfully submit this memorandum of law in support of their motion pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing plaintiff Nadire Atas's ("Atas") claims against The Times with prejudice.

## PRELIMINARY STATEMENT

Plaintiff Nadire Atas has a long record of abusing the judicial system in Canada. She has filed dozens of meritless claims, been deemed a vexatious litigant, and repeatedly violated Canadian court orders, leading even to imprisonment for contempt. Now, Atas brings those tactics to a new jurisdiction.

The gravamen of Atas's claim is that it was defamatory to report that she is a vexatious litigant who has engaged in years of online harassment and defamation against dozens of victims, that she has suffered from mental illness, that she was fired for dishonesty, and that she was charged with assault. Each of these statements, however, is either demonstrably true based on Canadian court records, or shielded by the fair report privilege, or the supporting public record is so extensive that Atas cannot possibly show actual malice. Atas's claims lack any basis in law and all claims against The Times defendants should be dismissed with prejudice.

## BACKGROUND

I.    **ATAS'S LEGAL PROCEEDINGS IN CANADA PRIOR TO PUBLICATION**

As set out in the Complaint and documents of which the court may take judicial notice, prior to the publications at issue, Atas was a party to many civil and criminal proceedings in Canada. *See* Third Amended Complaint, Dec. 28, 2022, ECF No. 43 ("Compl.")  ¶¶ 39-42, 47, 51-55; *Atas v. Dale and Lessmann LLP*, 2018 H.R.T.O. 894 (Can.), ¶¶ 23-24, *available at* https://canlii.ca/t/ht17n ("In addition to filing [eleven] applications with the Tribunal, the

applicant has been involved in dozens of civil proceedings"). Those records are dispositive of

Atas's claims; the most pertinent are set out below.

A.     **Atas Was Found to Have Engaged in Campaigns of Defamation and
        Harassment**

On January 28, 2021—two days prior to The Times' first article about Atas—the Ontario

Superior Court granted summary judgment to 48 plaintiffs who brought suit against Atas

alleging that she subjected them and dozens of others to years-long campaigns of harassment and

defamation. Compl. ¶ 43; Declaration of David E. McCraw, dated January 27, 2023 ("McCraw

Decl.") Ex. A ("Caplan Judgment"). In granting summary judgment, the court found as fact that

Atas engaged in:

> extraordinary campaigns of malicious harassment and defamation
> carried out unchecked, for many years, as unlawful acts of reprisal.
> Nadire Atas, has used the internet to disseminate vicious falsehoods
> against those towards whom she bears grudges, and towards family
> members and associates of those against whom she bears grudges. .
> . . Atas has carried on systematic campaigns of malicious falsehood
> to cause emotional and psychological harm to persons against whom
> she has grievances. These include adverse parties in litigation, Atas'
> own lawyers, and the lawyers and agents, relatives (including
> siblings, spouses and children) of these people, a former employer,
> its successor, owners, managers and employees of this former
> employer, and generally an ever-widening circle of victims,
> generally chosen to cause misery to Atas' prime victims, those
> against whom she harbours festering grievances. As of the time that
> these motions were argued, there have been as many as 150 victims
> of Atas' attacks.

Caplan Judgment ¶¶ 1-7. The court reached these conclusions based on a "voluminous record" of

more than 30,000 pages of evidence. *Id.* ¶ 72 & n.23. Based on that record, the court also found

that:

- Atas began her campaigns of abuse in the 1990s by attacking John Babcock, a former

   employer. She sent obscene letters to his neighbors, mocking the death of his wife and

claiming that he was roaming the neighborhood at night and "masturbating behind the bushes." *Id.* ¶¶ 57-59, 77-79.

- Later, Atas renewed her attacks via "a systematic campaign of internet defamation and harassment" against Babcock, his family members, the successors to his firm, real estate agents who worked for him, and even family members of those agents. *Id.* ¶¶ 61-63, 70. Among other things, in online postings, Atas called them "scammers," "thieves," and "dangerous pedophiles," often including their pictures. *Id.* ¶ 61.

- In 2010 and 2016, Atas engaged in campaigns of internet defamation related to a mortgage dispute. *Id.* ¶¶ 80-82. Atas targeted the opposing party, its counsel (including lawyer Christina Wallis), and even Atas's own lawyers for online abuse. *Id.* When Atas was enjoined from defaming Wallis, she attacked Wallis's family instead: "After a death in Ms. Wallis' family . . . attacks began against every member named in that obituary." *Id.* ¶ 38.

- In 2018, Atas launched a campaign against a lawyer, Gary Caplan, and his family and associates. This included Caplan's brother, "a reputable cardiologist" from New Mexico whom Atas posted was a "pedophile and child pornographer." *Id.* ¶ 36. The plaintiffs in the Caplan proceedings submitted, as evidence of Atas's defamation, "3,747 online posts, on 77 different web sites, directed against 150 different victims." *Id.* ¶ 140. The Court found that Atas authored all of them. *Id.* ¶ 143.

- Atas made obscene and highly defamatory statements about her victims, alleging they "acted in violation of professional standards, have committed fraud, and, in some cases, are prostitutes, 'sluts', sexual predators, pedophiles . . . [and] members of organizations

advocating sexual exploitation of children . . . ." *Id.* ¶¶ 116-19. Atas admitted that she was the author of many of the defamatory posts. *Id.* ¶¶ 82, 122-23, 127-28, 142(a).

- Atas posted these comments "anonymously, pseudonymously, or by using false names" on sites including Wordpress, Ripoff Reports, Reddit, Pinterest, Facebook, Lawyerratingz, Blogspot, and "dozens of other less well known sites such as 'cheaters.com' and 'reportcheatingonline.'" *Id.* ¶ 120. *See also id.* ¶¶ 130, 223.

### B.    **Atas Was Deemed Mentally Ill**

In multiple Canadian proceedings, Atas has claimed to be mentally ill and courts have found her to be so. *See, e.g.*, *Peoples Trust Company v. Atas*, 2018 O.N.S.C. 58 (Can.), *available at*: https://canlii.ca/t/hpj2z (recounting extensive proceedings regarding Atas's mental health, her sworn testimony that she suffers from mental illness, previous judicial decisions finding that she is mentally ill, and concluding that "she has long suffered from mental illness."). This included the Caplan proceedings, where Atas at one point sought to have a guardian appointed for herself, on the basis that she was mentally ill. Caplan Judgment ¶ 86. The court characterized Atas as "driven by hatred and profound mental illness." *Id.* ¶ 6. *See also id.* ¶ 3 ("Serious mental illness must underlie this conduct . . . .").

### C.    **Atas Was Found to Have Been Fired for Dishonesty**

In the Caplan Judgment, the court also made findings regarding the genesis of Atas's feud with the Babcocks. The court found that Atas was employed by John Babcock's real estate firm but was "placed on probation . . . for not adhering to professional standards" and was fired in 1993 for dishonesty after she "forged extensions to a listing agreement." *Id.* ¶¶ 53-4, 77. The court further made findings regarding Atas's subsequent loss of income and professional standing: Atas is currently "destitute, lives in shelters, owns no property other than the clothes on her back and a cellphone, and is an undischarged bankrupt." *Id.* ¶ 93.

4

D.    **Atas Was Declared a Vexatious Litigant**

As set out in the Complaint, the Caplan Judgment, and other Canadian judicial decisions, Atas has been adjudicated a vexatious litigant on at least three occasions. Compl. ¶ 60-66; Caplan Judgment ¶ 45 & n.9. *See also Peoples Trust*, 2018 O.N.S.C. 58, ¶ 7 ("Nadire Atas is a vexatious litigant, and obviously so."); *Dale and Lessman LLP,* 2018 H.R.T.O. 894, ¶ 40(2) ("The applicant is declared a vexatious litigant").

E.    **Atas Was Charged with Assault and Other Crimes**

The Complaint, Canadian judicial decisions, and Canadian court records show that Atas was arrested and criminally charged on multiple occasions, including for assault. *See* Compl. ¶ 123-25; *Peoples Trust Company*, 2018 O.N.S.C. 58, ¶ 354 (noting Atas was unlawfully entering houses that were for sale, for which she was criminally charged); McCraw Decl. Ex. C (Ontario Court records showing Atas was arrested in February 2009 for assault, in March 2009 for failure to appear, in January 2010 for assault, unlawful entry, and related crimes, and in June 2010 for "fraudulently obtaining food").

F.    **Atas Was Alleged to Have Threatened Tenants and Maintained Her Properties in an Unsafe Condition**

As set out in the Caplan Judgment, one of Atas's campaigns of harassment arose out of foreclosure proceedings on two apartment buildings Atas owned. Caplan Judgment ¶ 11. In the course of those proceedings, plaintiffs submitted sworn affidavits and exhibits. *See, e.g.*, McCraw Decl. Ex B (Affidavit of Christine Perri, dated September 23, 2014 ("Perri Aff.")).[1] Those court filings included correspondence from tenants in the buildings asserting that Atas threatened and "harassed us repeatedly, forcing us to finally call the police on her on the morning

---

[1] As filed, the Perri Affidavit includes more than 2,000 pages of exhibits. The Times has included those exhibits relevant to this motion. Should the Court wish to review all exhibits, The Times would be glad to provide a full copy of the filing.

on Friday February 6th, 2009." Perri Aff. Ex. 86. Residents asserted that "[S]ince she has been threatening us . . . we have been scared to leave the unit unattended." *Id.*

The filings also concern the unsafe condition of the properties and criminal charges against Atas. *See* Perri Aff. ¶ 10 & Ex. 75 (Mortgagee received reports of "garbage debris scattered throughout staircases and hallways that posed health and dire hazard issues"), ¶ 23 & Ex. 86 (Mortgagee received complaints from tenants about "health and fire code violations, and threats to the tenants by Atas"); Ex. 83, ¶ 11 (Defendant "received complaints from tenants that a stench . . . was emanating from the unit which Atas had occupied. . . . the unit was in total disarray . . . . Atas had been using the unit for the storage of garbage bags."); Ex. 126, ¶ 34 (Mortgagee received complaints from tenants regarding "health and Fire Code violations, and threats made by Atas to the tenants. These events led to police involvement and criminal charges being laid against Atas.").

## II.     THE PUBLICATIONS AT ISSUE

### A.     The January Article

On January 30, 2021, The Times published an article by reporter Kashmir Hill, titled "A Vast Web of Vengeance" (the "January Article"). Compl. ¶ 2; McCraw Decl. Ex. D. The article begins by recounting how the Babcock family was smeared online as pedophiles and fraudsters, via a constellation of "complaint sites." It discusses how those sites operate, their devastating personal and professional impact, victims' desperate attempts to have the posts taken down, and their eventual discovery that Atas might be behind the posts.

The January Article then describes Atas's life story: how her once-successful real estate career unraveled and she became an increasingly troubled person charged with assault, her properties repossessed, struggling with mental illness, and embroiled in lawsuits. The article

describes how, during that period, Atas allegedly began to seek revenge, through anonymous

online postings against her perceived enemies.

It then discusses the Canadian judicial proceedings, with links to various judgments.

These include decisions deeming Atas a vexatious litigant, plaintiffs' efforts to prove to the court

that Atas authored the posts, Atas's imprisonment for contempt, and, finally, the Caplan

Judgment. The article also described Hill's reporting process and how she, her husband, and her

editor also were smeared online after Hill interviewed Atas. Following publication of the January

Article, The Times and Hill published excerpts and summaries of the reporting to social media,

with links to the full January Article. Compl. ¶¶ 5-8, 93-94, 133-34.[2]

B.     **Atas's February 2021 Arrest and Criminal Proceedings**

On February 9, 2021, Atas was arrested and charged with criminal harassment and libel.

Compl. ¶¶ 51-53. The alleged victims included Gary Caplan, Joseph Caplan, Matthew Cameron,

Matt Hefler, Christina Wallis, Natalie Wallis, and Guy Babcock. *Id.* ¶ 53.

C.     **The February Article**

On February 10, 2021, The Times published an article by Hill, titled "Woman Accused of

Defaming Dozens Online is Arrested" (the "February Article"). Compl. ¶ 3; McCraw Decl. Ex.

E. The article reported on Atas's arrest and the allegations against her, quoting a spokeswoman

for the Toronto police. McCraw Decl. Ex. E. The article also summarized the January Article,

the Caplan Judgment, and Wallis and others' efforts to have Atas arrested. *Id.*

---

[2] The posts remain available online at https://twitter.com/nytimes/status/1355606062779551744
(NYT tweets); https://www.linkedin.com/posts/kashmirhill_a-vast-web-of-vengeance-activity-
6761483478031724544-9aOK?utm_source=share&utm_medium=member_desktop (Hill
LinkedIn Post); https://twitter.com/kashhill/status/1355602407082831874 (Hill tweets).

### D.      **The February Interview**

On February 17, 2021, Hill was interviewed by CBC Radio. Compl. ¶¶ 101, 147, 149, 152. During the interview, Hill summarized her prior reporting. This included recounting how Atas first harassed Guy Babcock via letters before moving online. *Id.* Hill then described how Atas used a "constellation" of other "gripe sites" to make "hundreds of posts, thousands of posts," claiming "that people, they were frauds, that they were scammers, that they were thieves. . . . [C]alling them sexual deviants and pedophiles." *Id.* ¶ 147. Hill described how she, her husband, and her editor also were subject to defamatory posts after she interviewed Atas. *Id.* ¶ 152. Hill also explained that Atas had been criminally charged but questioned whether incarceration was appropriate, given Atas's mental illness. *Id.* ¶ 150.

### E.      **The April 6 Podcast**

On April 6, 2021, Hill was interviewed by Michael Barbaro on The Daily podcast. *Id.* ¶¶ 156-71.[3] In the interview, Hill summarized her prior reporting. Among other things, Hill described: Atas's firing by the Babcock firm for dishonesty, her campaigns of harassment, the efforts of her victims to uncover the source of the defamatory posts, the ensuing court proceedings in Canada, the Caplan Judgment, Hill's reporting process and the defamatory posts made about Hill, the criminal charges against Atas, and the impact of Atas's defamation. *Id.*

### F.      **Atas's April 7 Criminal Charges**

On April 7, 2021, Atas was charged in Canada with additional offenses of criminal harassment and libel against Lily Meier (the daughter of an editor at The Times) and three others. Compl. ¶ 54.

---

[3] The podcast remains available online at https://www.nytimes.com/2021/04/06/podcasts/the-daily/a-vast-web-of-vengeance-part-1.html.

G.     **The April 24 Article**

On April 24, 2021, The Times published an article by Hill and Aaron Krolik, titled "The Slander Industry." Compl. ¶ 179; McCraw Decl. Ex F. The article is an investigation into the "gripe site" industry; it makes only passing reference to the January Article. Compl. ¶¶ 179-80 ("Earlier this year, we wrote about a woman in Toronto who poisoned the reputations of dozens of her perceived enemies by <u>posting lies</u> about them."). The underlined text hyperlinks to the January Article.

H.     **The April 26 Interview**

On April 26, 2021, Hill and Krolik were interviewed on the podcast series *In Lieu of Fun*. *Id.* ¶ 175.[4] During the podcast, they described The Times's prior reporting on Atas as "about a man named Guy Babcock and his family and over 100 other people who are all attacked online by this woman in Canada who holds serial grudges and would go online and call these people pedophiles, sexual deviants, thieves, scammers." *Id.* Hill also described one of Atas's "targets," a lawyer, and the impact her harassment and defamation had on his career. *Id.* ¶¶ 177-78.

I.     **The May 3 Podcast**

On May 2, 2021, Hill was interviewed by Michael Barbaro on The Daily podcast. *Id.* ¶¶ 173-74.[5] Barbaro introduced Hill by summarizing her prior interview, where she "told the story of a family whose reputation was ruined online" by "a woman with a vendetta that stretched back 30 years." *Id.*

---

[4] The podcast remains available online at https://www.youtube.com/watch?v=N0kRJYccifA.
[5] The podcast remains available online at https://www.nytimes.com/2021/05/03/podcasts/the-daily/a-vast-web-of-vengeance-part-2.html.

III.     **THE COMPLAINT**

On January 31, 2022, Atas filed this action. ECF No. 2. Atas's initial Complaint was

dismissed for lack of subject matter jurisdiction, with leave to replead. ECF No. 8. Atas then

amended her complaint three times: on October 17, 2022, December 14, 2022, and December 28,

2022. ECF Nos. 23, 36, 43. On January 6, 2023, the court denied Atas permission to amend for a

fourth time. ECF No. 47.

The Third Amended Complaint asserts six claims for defamation against The Times

based on statements made in the January Article, the February Article, the February Interview,

the April 6 Podcast, the April 24 Article, the April 26 Interview, and the May 3 Podcast. Compl.

¶¶ 181-252. Atas also asserts a seventh claim, for "negligent supervision and/or retention,"

against The Times. *Id.* at ¶¶ 253-62. Atas seeks damages of $100 million, punitive damages of

$400 million, and costs. *Id.* at 69.

## **LEGAL STANDARD**

I.     **MOTION TO DISMISS**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief

that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court must accept the Complaint's factual

allegations as true and draw reasonable inferences in Plaintiff's favor, *ATSI Communications,*

*Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007), the Court is not obligated to accept as

true legal conclusions couched as factual allegations. *Rolon v. Hennenman*, 517 F.3d 140, 148-49

(2d Cir. 2008). *See also Iqbal*, 556 U.S. at 678. Nor must a court "accept as truth conflicting

pleadings . . . that are contradicted either by statements in the complaint itself or by documents

upon which its pleadings rely, or by facts of which the court may take judicial notice." *In re*

*Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001) (collecting

cases). Robust application of the *Iqbal/Twombly* standard "has a particular value" in the defamation context, because "forcing defamation defendants to incur unnecessary costs can chill the exercise of constitutionally protected freedoms." *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 279 (S.D.N.Y. 2013) (internal marks omitted).

## II.   NEW YORK ANTI-SLAPP LAW

Atas's claims against The Times also constitute an action involving public petition and participation under N.Y. Civil Rights Law § 76-a and are therefore subject to the provisions of the New York anti-SLAPP law. *See, e.g.*, *Sweigert v. Goodman*, No. 18 Civ. 8653 (VEC) (SDA), 2021 U.S. Dist. LEXIS 77704, at *1-4 (S.D.N.Y. Apr. 22, 2021).[6] The amended Anti-SLAPP law imposes significant obstacles to lawsuits such as this one, where the plaintiff targets public speech in connection with an issue of public interest. The express purpose of the Anti-SLAPP law is to deter such claims and facilitate their early dismissal. *See* Office of the Governor, *Governor Cuomo Signs Legislation to Stop Frivolous Lawsuits Meant to Intimidate, Bully or Suppress Free Speech* (Nov. 10, 2020), https://tinyurl.com/3upue75k. This is consistent with New York's well-established commitment to protecting freedom of expression by disposing of defamation claims at the earliest possible stage. Under the amended law, the plaintiff must demonstrate that the purportedly defamatory statements were made with actual malice, even when the plaintiff is not a public figure. N.Y. Civ. Rights Law § 76–a (2).

---

[6] While some courts have concluded that certain provisions of the law, such as its heightened pleading standard, conflict with the federal rules, substantive provisions—in particular, the requirement that plaintiffs plead and prove actual malice—are not precluded. *See, e.g.*, *Carroll v. Trump*, 590 F. Supp. 3d 575, 581 (S.D.N.Y. 2022); *Kesner v. Buhl*, 590 F. Supp. 3d 680, 693 (S.D.N.Y. 2022); *Coleman v. Grand*, 523 F. Supp. 3d 244, 259 (E.D.N.Y. 2021).

III.     **JUDICIAL NOTICE**

When adjudicating a motion to dismiss, the court may properly consider "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quotation omitted). "A complaint is [also] deemed to include any . . . materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Id.* (quotation omitted). Here, Atas's Complaint cites to and incorporates: filings in the Caplan proceedings, including the Caplan Judgment, Compl. ¶¶ 39-42, 60-71; Atas's criminal record and criminal complaints made out against her, *id.* ¶¶ 51-54, 115, 123-26, 129-32; and other filings made in judicial proceedings, *id* ¶ 126.

In addition, it is well-settled that courts may take judicial notice of other court proceedings and records outside the pleadings for the fact of their existence. *See, e.g.*, *Guzman v. United States*, No. 11-cv-5834 (JPO), 2013 U.S. Dist. LEXIS 131684, at *9 (S.D.N.Y. Feb. 14, 2013) ("It is common and entirely proper for courts to take judicial notice of other court proceedings." (collecting cases)). This includes criminal records, *see, e.g.*, *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 353-54 (S.D.N.Y. 1998) (collecting cases), and foreign judgments, *Lichtenstein v. Cader*, No. 13-cv-2690 (LAK) (JLC), 2013 U.S. Dist. LEXIS 127645, at *6 (S.D.N.Y. Sept. 6, 2013) (collecting cases). The court may, therefore, properly take judicial notice of Atas's criminal record, Canadian judicial decisions, filings, affidavits, and exhibits submitted as part of those proceedings, and other official records.

## ARGUMENT

Atas's Complaint fails to state any plausible claim: her claims are premised entirely on statements that she concedes to be true or that are a matter of public record or whose truth she is estopped from relitigating. In addition, Atas has made no effort to plead actual malice, a standard

12

she plainly cannot meet, given the extensive public record supporting the statements at issue. Atas's claims against The Times should be dismissed with prejudice.

I.     **THE STATEMENTS AT ISSUE ARE SUBSTANTIALLY TRUE**

Atas's claims fail, first, for the simple reasons that she cannot show—and is in many instances collaterally estopped from relitigating—that the statements are not "substantially true," a fundamental element of her claims. *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 302 (2d Cir. 1986) (A statement is not defamatory if it is "substantially true" and plaintiff bears the burden of proving falsity). "Substantial truth" does not mean forensic accuracy. *Id.* Rather, the First Amendment and New York law protect a speaker from liability so long as the contested statements carry the same "gist" or sting as the pleaded truth. *See, e.g.*, *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 242 (2d Cir. 2017) (a statement is "substantially true" if it "would not have a different effect on the mind of the reader from that which the pleaded truth would have produced." (quotation omitted)); *Printers II, Inc. v. Prof'ls Publ'g, Inc*., 784 F.2d 141, 146 (2d Cir. 1986) ("Under New York law, it is not necessary to demonstrate complete accuracy to defeat a charge of libel. It is only necessary that the gist or substance of the challenged statements be true.").

Here, many of the statements Atas summarily alleges to be false and defamatory are matters of judicial record. For example, Atas alleges it was false and defamatory to say that she had been arrested for assault and subject to a peace bond. Compl. ¶ 120. But the Complaint itself and Canadian criminal records show that Atas *was* arrested for assault. *See* Compl. ¶ 123; McCraw Decl. C. To the extent that Atas quibbles with the dates of her arrest or the description of the meaning of a "peace bond," these differences do not alter the gist of the statements at issue and do not render them actionable. To the extent that Atas claims it was defamatory to suggest

13

she was deemed a vexatious litigant, that, too, is conceded in the Complaint itself and is a matter of judicial record.

Other statements at issue have been adjudicated to be true and Atas cannot now seek to relitigate their truth or falsity: the doctrine of nonmutual collateral estoppel bars Atas from challenging prior adverse judgments to which she was a party. *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015) (This doctrine "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." (citation omitted)); *Montesa v. Schwartz*, No. 12-cv-6057 (CS), 2015 U.S. Dist. LEXIS 193000, *18-19 (S.D.N.Y. Sept. 22, 2015) ("Under non-mutual collateral estoppel, if a litigant has had an opportunity to fully and fairly litigate an issue and lost, then third parties unrelated to the original action can bar the litigant from relitigating that same issue in a subsequent suit." (quotation omitted)). The doctrine applies to both domestic and foreign proceedings. *See, e.g.*, *Trikona Advisors, Ltd. v. Chugh*, 846 F.3d 22, 32 (2d Cir. 2017) (district properly applied the doctrine of collateral estoppel based on Cayman Islands judgment). And "foreign judgments are not treated as matters outside the pleadings for purposes of a motion to dismiss where, as here, a defendant raises the affirmative defense of collateral estoppel." *Lichtenstein*, 2013 U.S. Dist. LEXIS 127645, at *7.

Atas cannot now seek to relitigate, for example, the findings of the court in the Caplan Judgment or other Canadian judgments entered against her. *See, e.g.*, *Dale and Lessmann LLP*, 2018 H.R.T.O. 894; *Peoples Trust Company*, 2018 O.N.S.C. 58. All elements of the doctrine are met: the facts at issue were squarely before the Canadian courts, Atas had a full and fair opportunity to litigate them, and the courts adjudicated them to be true.

14

For example, Atas's chief allegation is that it was false and defamatory to allege that she is the author of anonymous defamatory statements about dozens of people, posted to internet blogs and "gripe sites." But, after years of litigation and based on an extensive factual record, the court in the Caplan proceedings found these statements to be true and on that basis awarded judgment to the plaintiffs. Under well-established principles, Atas is estopped from now relitigating those findings in a claim against The Times.

In an effort to get around these issues, Atas apparently disputes specific details, such as whether she used Craigslist, or whether specific individuals, like Mark Heffler or Kashmir Hill, were among her victims, or whether her photo appeared on a specific defamatory post. *See, e.g.*, Compl. ¶¶ 92, 98, 108, 128. But even if these details were false, her claims would still fail because the defamatory gist or sting is the same as the truth. Atas has been adjudged to have harassed and defamed more than 100 victims online, in the same manner as alleged. *See, e.g.*, Caplan Judgment ¶¶ 3-7. Whether the harassment was accomplished via Cragslist or some other website or directed against Heffler or some other person would not render the statements actionable. *See, e.g.*, *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991) (a statement "is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.").

## II.   THE FAIR REPORT PRIVILEGE BARS ATAS'S CLAIMS

Many of Atas's claims also fail because they are barred by the fair report privilege. New York's fair report privilege, codified at Civil Rights Law § 74, "confers an absolute immunity, regardless of proof of malice or negligence, upon any person who publishes a 'fair and true report'" of a judicial proceeding." *Beary v. West Publ'g Co.*, 763 F.2d 66, 68 (2d Cir. 1985) (quoting N.Y. Civ. Rights Law § 74). The privilege is to be liberally interpreted "so as to provide

broad protection to news accounts of judicial . . . proceedings." *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 93 (2d Cir. 2017) (quotation omitted).

Here, much of the reporting at issue relies on and conveys the contents of judicial proceedings. For example, the January Article explicitly relies on the contents of police reports in England and Canada, affidavits filed in Canadian court, lawsuits filed by Wallis and her colleagues, public filings in the Caplan proceedings and other cases, Ontario criminal court records, tenant complaints filed as exhibits in court, filings in mortgage foreclosure proceedings involving Wallis, Atas's civil lawsuits against others, Canadian contempt proceedings, and, of course, the Caplan Judgment (to which the story hyperlinks). Similarly, the February Article and related interviews are specifically about Atas's arrest and the criminal complaint against her. And much of the other interviews summarize and refer listeners back to this prior privilege reporting. This is precisely the kind of reporting that the fair report privilege is intended to shield from liability and on that basis, too, Atas's claims fail.

## III.   ATAS HAS NOT AND CANNOT PLAUSIBLY PLEAD ACTUAL MALICE

Atas's claims also independently fail because she has not and cannot show that the statements at issue were published with "actual malice," as required by New York's anti-SLAPP statute. N.Y. Civ. Rights Law § 76–a(d)(2). "Actual malice" is a legal term of art, meaning that the journalists who published the Article did so with knowledge that statements were false or despite a "high degree of awareness" of their "probable falsity." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989). *See also* N.Y. Civ. Rights Law § 76-a(2). This showing must be made, even at the pleading stage, by pointing to "clear and convincing evidence." *Contemporary Mission, Inc. v. The New York Times Co.*, 842 F.2d 612, 621 (2d Cir. 1988). Put simply, Atas was required in her Complaint to plead facts that would plausibly establish that The

Times knew or should have known that she had *not* defamed people online, that she had *not* been arrested for assault, that she was *not* fired for fraud—and so on.

Atas makes no effort to meet the actual malice standard. Nor could she, given the public record set out above. Instead, Atas just recites the bare legal standard. *See, e.g.*, Compl. ¶¶ 188, 200, 212, 224, 236, 248. But reciting "actual-malice buzzwords" does not satisfy the *Iqbal*/*Twombly* standard. *Biro,* 963 F. Supp. 2d at 279 (collecting cases). *See also, e.g., Egiazaryan v. Zalmayev*, No. 11-cv-2670 (PKC), 2011 U.S. Dist. LEXIS 140851, at *23 (S.D.N.Y. Dec. 7, 2011) (dismissing claim where plaintiff's "repeated assertion" that defendant had published with actual malice was inadequate "legal conclusion" not supported by relevant facts).

Most obviously, Atas fails adequately to plead actual malice as to her campaigns of harassment and her arrests for assault. Plainly, she cannot meet that burden, given the Caplan Judgment and other court records. Atas also alleges that it was false and defamatory to say that she suffers from mental illness. But the Complaint and other court records show that Atas *herself* claimed she was mentally ill. Compl. ¶ 142. Among other things, she has repeatedly alleged she was discriminated against due to mental illness, *see, e.g.*, *Peoples Trust*, 2018 O.N.S.C. 58, ¶¶116-45, she sought a litigation guardian in the Caplan proceedings on the basis that she suffered from mental illness, Caplan Judgment ¶ 86, and at various times she has in fact been deemed to be mentally ill. *See, e.g.*, *Peoples Trust*, 2018 O.N.S.C. 58, ¶ 144. She does not point to any information that would have put The Times on notice of the falsity of her own claims.

And having created an extensive judicial record of her own mental illness, Atas cannot now seek to impose liability on The Times for reporting on it.[7]

Atas similarly pleads that it was false and defamatory to report that she allegedly threatened her tenants and made them feel unsafe. Compl. ¶ 122. But Atas's own Complaint acknowledges that the tenants made such complaints to the police and that their complaints were put before the Canadian courts as part of legal proceedings in Canada. *See, e.g.*, Compl. ¶¶ 123-26. She does not point to any information that would have put The Times on notice of the *falsity* of those allegations.

Atas also claims that it was false and defamatory to report that Babcock's firm fired her for forging a homeowner's signature. Compl. ¶¶ 157-58. But, as the Caplan Judgement makes clear, the Canadian court found that Atas was employed by Babcock's real estate firm, that she was "placed on probation . . . for not adhering to professional standards," and was fired in 1993 for dishonesty after she "forged extensions to a listing agreement." Caplan Judgment ¶¶ 54, 77. Atas again points to no information contradicting the court's findings or any basis for pleading that The Times published those statements with actual malice. That is precisely the kind of "unadorned" and "[t]hreadbare recital[ ] of the elements of a cause of action" that fails to satisfy Rule 8. *Iqbal*, 556 U.S. at 678. On this basis, too, her claims must be dismissed.

## IV.   ATAS'S VICARIOUS LIABILITY CLAIM FAILS

Finally, Atas's claims of vicarious liability against The New York Times Company also fail and must be dismissed. Atas apparently asserts theories of both negligent supervision and

---

[7] Atas apparently attempts to draw a distinction by claiming it was false that family members attempted to *help* her with her mental illness. Compl. ¶ 103. But that distinction carries no defamatory sting: there is nothing defamatory about family members offering help with a medical problem that itself is well-documented.

respondeat superior. Compl. ¶¶ 253-62. Both claims require, as predicate, a showing that an

employee committed a tort. The only torts alleged are that employees made defamatory

statements about Atas. Compl. ¶¶ 253-62. But, as set out above, none of those statements were

actionable. Any claim for vicarious liability thus also fails.

## **CONCLUSION**

For all the reasons set forth above, The Times respectfully requests that the Court dismiss

the Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) and provide

such other and further relief as the Court deems appropriate.

Dated: New York, NY          Respectfully submitted,
       January 27, 2023


                                      */s/David E. McCraw*
                                      David E. McCraw
                                      The New York Times Company
                                      Legal Department
                                      620 Eighth Avenue
                                      New York, NY 10018
                                      Phone: (212) 556-1234
                                      Fax: (212) 556-4634
                                      mccrad@nytimes.com

                                      *Attorney for Defendants The New York Times*
                                      *Company, Ellen Pollock, Kashmir Hill, Aaron*
                                      *Krolik, The Daily Podcast, Michael Barbaro, John*
                                      *Does 1-20, and XYZ Corporations 1-10*